UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

CHARITY JANE MOSES, )
   Plaintiff, )
)
v. ) Case No: 1:12-CV-383
) Collier/Carter
CAROLYN W. COLVIN, )
Commissioner of Social Security, )
   Defendant. )

REPORT AND RECOMMENDATION

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner denying the Plaintiff's Applications for Child's Disability Benefits and Supplemental Security Income under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, and 1382.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation regarding the disposition of Plaintiff's Motion for Judgment on the Pleadings[Doc. 14] and Defendant's Motion for Summary Judgment [Doc. 16].

For the reasons stated herein, I RECOMMEND the decision of the Commissioner be AFFIRMED.

Plaintiff's Age, Education, and Past Relevant Work:

Plaintiff was 28 years old at the time of the ALJ's decision (Tr. 32). She has a special education diploma and no past relevant work, but did participate in a vocational training program (Tr. 26, 173, 174).

1

Application for Benefits:

Plaintiff protectively filed applications for child's disability insurance benefits and supplemental security income payments on January 29, 2010. In these applications, Plaintiff alleged disability beginning August 21, 1983. (Tr. 35-36). Plaintiff subsequently amended her alleged onset date to August 21, 2005. (See Tr. 9). The Commissioner denied her claims initially on July 28, 2010 and upon reconsideration on October 22, 2010. (Tr. 42-53). Plaintiff filed a timely Request for Hearing. A hearing was held before ALJ Eduardo Soto on July 8, 2011, in Chattanooga, Tennessee. (Tr. 23). Following the hearing, the ALJ rendered an unfavorable decision dated September 7, 2011. (Tr. 6). Plaintiff subsequently appealed, and the Appeals Council issued a letter dated October 23, 2012 declining to review the case. (Tr. 1). Having exhausted her administrative appeals, Plaintiff filed a complaint with this Court under 42 U.S.C. §§ 405(g) and 1383(c)(3).

The ALJ's Findings:

The ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since December 30, 2006, the alleged onset date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: obesity; learning disorder not otherwise specified; monocular vision; and bipolar disorder not otherwise specified (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: no work on

2

> ladders, ropes, or scaffolds; limited to monocular vision; is able
> to understand and remember one-two, and three-step
> instructions but not multistep instructions; can maintain
> adequate attention, concentration, persistence, and pace for
> two-hour intervals; is able to interact appropriately with others;
> and is able to adapt to infrequent changes in the workplace.
>
> 5. The claimant has no past relevant work (20 CFR 416.965).
>
> 6. The claimant was born on August 21, 1983, and was 23 years old, which is defined as a younger individual age 18-49, on the revised disability onset date (20 CFR 416.963).
>
> 7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).
>
> 8. Transferability of jobs skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).
>
> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).
>
> 10. The claimant has not been under a disability, as defined in the Social Security Act, from December 30, 2006, through the date of this decision (20 CFR 416.920(g)).

(Tr. 11-17).

Disability Eligibility:

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result

3

in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his/her physical or mental impairment or impairments are of such severity that he/she is not only unable to do his/her previous work but cannot, considering his/her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he/she lives, or whether a specific job vacancy exists for him/her, or whether he/she would be hired if he/she applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he/she is not disabled.

2. If claimant is not doing substantial gainful activity, his/her impairment must be severe before he/she can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his/her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him/her from doing his/her past relevant work, he/she is not disabled.

5. Even if claimant's impairment does prevent him/her from doing his/her past relevant work, if other work exists in the national economy that accommodates his/her residual functional capacity and vocational factors (age, education, skills, etc.), he/she is not disabled

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. §404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at

4

529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

Standard of Review:

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court

5

interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547. On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

Factual Background:

Plaintiff alleged she had been unable to work since August 21, 2005, when she turned 22 (Tr. 229). Plaintiff alleged disability due to dyslexia, blindness in left eye, hernia, carpal tunnel syndrome, depression, "mild retardation," and "Scyrisis" (Tr. 172).

The ALJ determined that Plaintiff had worked since her alleged onset date but that this work activity did not rise to the level of substantial gainful activity (Tr. 11). The ALJ determined Plaintiff had the severe impairments of obesity; learning disorder, not otherwise specified; monocular vision; and bipolar disorder, not otherwise specified (Tr. 11-13). In Finding 3, the ALJ concluded Plaintiff's impairments either alone or in combination did not meet or medically equal the criteria of an impairment listed at 20 C.F.R. Part 404, Subpt. P, App. 1. In doing so he noted claimant's representative did not assert that any physical listing is met or equaled and that he found no documented evidence of one (Tr. 13-14).

The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work but could not work on ladders, ropes or scaffolds; was limited to monocular vision; could not understand and remember multi-step instructions; could maintain attention, concentration, persistence, and pace for two-hour intervals; could interact appropriately with others; and could adapt to infrequent changes in the workplace (Tr. 14-15). Plaintiff had no past relevant work, so the ALJ proceeded to step five of the sequential evaluation and determined, using the Medical-Vocational Guidelines as a framework for decision making, that she was capable of performing other work in the national economy (Tr. 16-17). The ALJ concluded a finding of "not disabled" was appropriate under the framework of Rule 202.20 (Tr. 17). Therefore, the ALJ found Plaintiff was not under a disability (Tr. 17), and Plaintiff filed this appeal. A summary of the factual findings of the ALJ are set out in the hearing decision (Tr. 11-16).

Issue Presented:

Plaintiff argues the Commissioner erred by failing to consider whether Plaintiff met or equaled the requirements of Listing 12.05C, when evidence requested by the ALJ

at the hearing supported such a finding.

Analysis:

The only issue Plaintiff raises is that the ALJ's Decision clearly did not consider Listing 12.05C but only considered Listings 12.02 and 12.04 (Doc. 15, p. 9). She points out that a disability claimant meets the requirements of Listing 12.05C if three criterion are established: (1) initial onset of subaverage general intellectual functioning and deficits in adaptive functioning prior to age 22; (2) a "valid verbal, performance, or full scale IQ of 60 through 70;" and (3) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." She references the DSM-IV-TR, "mild mental retardation is roughly equivalent to what used to be referred to as the educational category of 'educable.'" Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision (DSM-IV-TR), pp. 42–43 (2000).

As to the first requirement of 12.05C, she argues there is compelling evidence that "demonstrates or supports onset of the impairment before age 22," and that Plaintiff has a limited education, having obtained a special education certificate. Plaintiff enrolled in vocational rehabilitation services, where the state Division of Rehabilitation Services determined she met the criteria for placement due to her intellectual functioning and deficits in adaptive functioning. (Tr. 513-36).

She also argues that in comments to the Federal Register, the Commissioner has noted that IQ testing during developmental years is not required to meet Listing 12.05C: The proposed listing stated that the significantly sub-average general intellectual functioning with deficits in adaptive behavior must have been initially "manifested" during the

8

developmental period. We have always interpreted this word to include clinical practice of <u>inferring a diagnosis of mental retardation</u> when the longitudinal history and evidence of current functioning demonstrate that the impairment existed before the end of the developmental period. <u>See</u> 65 Fed Reg. 50746, 50772 (Aug. 20, 2000) (emphasis added). Therefore, continues the argument, based upon the entirety of the medical evidence, it is evident that the first prong of 12.05C has been established.

Plaintiff next argues she meets the second element of the listing, a valid IQ score in the MMR range of 60 to 70, based upon IQ testing performed in 2005 showing a composite score of 69. (Tr. 533). She argues this IQ score is buttressed by WRAT-III results that demonstrate validly that Plaintiff spells at the second grade level and performs mathematics at the fourth grade level or first percentile. (<u>Id</u>.).

Finally she argues it is not debatable that Plaintiff meets the third element of the listing, because the ALJ found multiple other "severe" physical and mental impairments.

The Commissioner disagrees and for reasons that follow, I agree with the Commissioner. First, when a Plaintiff alleges her impairments meet or equal a listed impairment, she must present specific medical findings that satisfy <u>all</u> of the criteria of the particular listing. <u>See</u> 20 C.F.R. §§ 416.920(a)(4)(iii), (d), 416.925, 416.926; <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530-32 (1990); <u>Foster v. Halter</u>, 279 F.3d 348, 354 (6th Cir. 2001); <u>Hale v. Sec'y of Health and Human Servs.</u>, 816 F.2d 1078, 1082-83 (6th Cir. 1987). The evidentiary standards for presumptive disability under the listings are stricter than for cases that proceed to other steps in the sequential evaluation process because the listings represent an automatic screening based on medical findings rather than an individual judgment based on all relevant factors in a claimant's claim.

9

See 20 C.F.R. §§ 416.920(d), 416.925, 416.926; Zebley, 493 U.S. at 532.

As the introduction to Listing 12.05 explains

> Listing 12.05 for mental retardation contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing. 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00(A).

The introductory paragraph to Listing 12.05 requires "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. part 404, subpt. P, app. 1, § 12.05. Listing 12.05, Part C, requires a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. Id. Plaintiff had to show that her impairments satisfied the diagnostic description of mental retardation found in the introductory paragraph of Listings 12.05 and that she had a valid IQ score of 70 or below and another separate and distinct severe impairment. See 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.00A, 12.05; Zebley, 493 U.S. at 530-32. Plaintiff failed to prove that her impairments satisfied all of the elements of Listing 12.05C.

Plaintiff claims she meets the requirements of § 12.05's introductory paragraph, having manifested deficits in adaptive functioning before the age of 22 (Doc. 15, Pl's Brief at 9-10). In support of her argument, Plaintiff points to her high school special education diploma and her acceptance for vocational rehabilitation services by the State Division of Rehabilitation Services. Plaintiff argues that from this evidence it can be inferred that Plaintiff manifested deficits in adaptive functioning before age 22 (Doc. 15, Pl's Brief at 9-10). However, even if Plaintiff

could show that she met the criteria of the introductory paragraph to Listing 12.05, she cannot show that she has the IQ score required by 12.05C, and, therefore, cannot show she meets Listing 12.05C.

Plaintiff argues that based on her 2005 "composite" IQ score of 69, and the ALJ's finding of other severe impairments, she meets the criteria for Listing 12.05C and should have been found disabled (Doc. 15, Pl's Br. at 10). While Plaintiff does have other severe impairments as identified by the ALJ (obesity, monocular vision, bipolar disorder), Plaintiff does not have the requisite IQ scores to meet the requirements of the listing (Tr. 11). Plaintiff cites to her performance on the "Kaufman Brief Intelligence Test," on which she received a "composite standard score" of 69 (Tr. 533). However, this is not an IQ test score (Tr. 533). The listing requires that claimant show a valid verbal, performance, or full scale IQ of 60 through 70. 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05C.

The record contains two sets of IQ test scores for Plaintiff and reference to a third (Tr. 249, 250, 449). A report provided by the Loudon County Schools indicates that in 1997, when Plaintiff was 14 years old, she took an IQ test and scored 84 on the verbal, 80 on the performance, and 82 was her full scale score (Tr. 249). When Plaintiff was again administered an IQ test in March 2000, when she was 16, she scored 84 on the verbal, 80 on the performance, and 82 was her full scale score (Tr. 250). When Plaintiff was administered an IQ test on July 18, 2010, when she was 26 years of age, she received valid scores of 90 on the verbal, 79 on performance, and 78 was her full scale score (Tr. 449). Thus, IQ test results for Plaintiff indicate that she never received a score on any portion of an IQ test of less than 70, which is a requirement of Listing 12.05C. 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05C. In fact,

Plaintiff's lowest score was 78 (Tr. 249, 250, 449).  I conclude this evidence supports the finding that Plaintiff did not meet or equal any listed impairment.

The Record also includes other mental evaluations completed by State agency physicians and consultative examiners, which do not diagnose mental retardation or indicate that Plaintiff has an impairment that meets Listing 12.05 (Tr. 266, 272, 450, 457).  State agency psychological consultants are highly qualified psychologists and other medical specialists and who are also experts in Social Security disability evaluation.  20 C.F.R. § 416.927(e)(2)(i).  The only mention of mental retardation in the file is a diagnosis of "mild mental retardation" in treatment notes from Romona Hicks, LCSW, and Karen Allen, MSN APRN BC (Tr. 318-372, 474-75, 480, 486-87, 494, 517-22).  Ms. Hicks and Ms. Allen, as a social worker and nurse, are not acceptable medical sources under the Commissioner's regulations for establishing an impairment.  20 C.F.R. § 416.913(a).  I conclude substantial evidence supports the ALJ's finding that Plaintiff's impairments did not meet a listed impairment, including Listing 12.05C (Tr. 13-14).  It does appear to be the case that the ALJ did not address the application of 12.05(C) other than a passing reference that claimant's representative did not specifically assert that any physical listing is met or equaled, and I find no documented evidence of one (Tr. 13).  However, the IQ scores of record are above the 60 to 70 range.  Further, the opinion of George T. Davis, Ph. D. supports the ALJ.  Davis, in a Physical Review Technique Form, assessed 12.05 mental retardation and did not find a a valid IQ of 60 -70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.  The medically determinable impairment assessed was Estimated Borderline IQ.  Based on this I conclude remanding this case to have the ALJ specifically discuss Listing 12.05C would serve no practical

12

purpose, would not alter the ALJ's findings, and would be a waste of judicial and administrative resources.  See Higgs v. Bowen, 880 F.2d 860, 864 (6th Cir. 1988); Price v. Heckler, 767 F.2d 281, 283-84 (6th Cir. 1985); see also Barron v. Sullivan, 934 F. 2d 227, 230 n.3 (11th Cir. 1991) (noting that reference to the listing in question was not necessary when the record supported the ALJ's findings); Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

Conclusion

Having carefully reviewed the administrative record and the briefs of the parties filed in support of their respective motions, I conclude there is substantial evidence in the record to support the findings of the ALJ and the decision of the Commissioner denying the Plaintiff's application for benefits. Accordingly, I RECOMMEND:

(1) The Plaintiff's motion for judgment on the pleadings (Doc. 14) be DENIED;
(2) The Defendant's motion for summary judgment (Doc. 16) be GRANTED;
(3) A judgment be entered pursuant to Rule 58 of the Federal Rules of Civil Procedure AFFIRMING the Commissioner's decision; and
(4) This action be DISMISSED. [1]

S /William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file of objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 149, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).

14

15